**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| MORGAN MURRAY,<br>Plaintiff,<br>v.<br>KAO USA, INC.<br>Defendant. | **JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff, Morgan Murray ("Plaintiff"), by and through her attorneys, Caffarelli & Associates Ltd., for her Complaint against Defendant Kao USA, Inc. ("Kao" or "Defendant"), states as follows:

## NATURE OF ACTION

1. Plaintiff brings this action against Defendant for its failure to properly accommodate Plaintiff for her medical conditions related to and arising out of pregnancy and childbirth in violated the Illinois Human Rights Act, 775 ILCS 5/1-101, *et seq.* ("IHRA"), the Providing Urgent Maternal Protections for Nursing Mothers Act, 29 USC §218(d) ("PUMP Act"), the Illinois Nursing Mothers in the Workplace Act, 820 ILCS 260/1, *et seq.* ("INMWA"), and the Pregnant Workers Fairness Act, 42 USC §2000 *et seq.* ("PWFA").

2. Plaintiff also alleges Defendant violated the IHRA and Americans with Disabilities Act 42 U.S.C. § 120101, *et seq.* ("ADA") by failing to provide a reasonable accommodation for her disability and terminating her because of her disability.

3. Plaintiff further alleges Defendant violated the Illinois Wage Payment and Collection Act, 820 ILCS 115/1, *et seq.* ("IWPCA") by failing to reimburse her pursuant to Defendant's reimbursement policies and practices.

## JURISDICTION AND VENUE

4. This Court has original jurisdiction over this case pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), 29 U.S.C. § 12117(a) (right to civil action for ADA violations), and 28 U.S.C. § 1367 (supplemental jurisdiction).

5. On October 17, 2025, Plaintiff filed her charge of discrimination with the Illinois Department of Human Rights ("IDHR") and the Equal Employment Opportunity Commission ("EEOC").

6. On December 24, 2025, the IDHR issued a notice of opt-out of the investigative and administrative process and right to commence a civil action. **Ex. A**.

7. Plaintiff filed the instant action within the 90-day right to sue period.

8. Plaintiff has therefore exhausted her administrative remedies and complied with all conditions precedent in bringing this action.

9. The unlawful employment practices described herein were committed in the Northern District of Illinois. Venue in the Eastern Division of the U.S. District Court for the Northern District of Illinois is proper pursuant to 28 U.S.C. § 1391(b) and 29 U.S.C. § 1132(e)(2).

## PARTIES

10. Plaintiff Morgan Murray is a resident of Davis Junction, Illinois.

11. Defendant is a Delaware corporation with its principal place of business in Cincinnati, Ohio.

12. Defendant's primary industry is the manufacturing and selling of personal care, beauty, and toiletry products.

13. At all relevant times, Defendant was Plaintiff's "employer" within the meaning of the IHRA, 775 ILCS 5/2-101(B), and ADA.

14. At all relevant times, Plaintiff was an "employee" of Defendant within the meaning of the IHRA, 775 ILCS 5/2-101(A), and ADA, 42 U.S.C. § 12111(5).

## FACTUAL ALLEGATIONS

15. On April 24, 2022, Plaintiff began working for Kao as a Field Education Manager.

16. Throughout her employment with Defendant, Plaintiff consistently met Kao's reasonable performance expectations.

17. The Field Education Manager position involves both field work and remote work.

18. For field work, Ms. Murray traveled to various salons to teach hair coloring classes; facilitate hair color, hair cutting, styling; teach product knowledge classes; and work with internal and external sales partners.

19. When conducting field work, Ms. Murray carried products and class materials in and out of the salons. The products and materials were stored either at her home or in a company-provided storage unit.

20. Non-field, remote work included facilitating and teaching virtual education classes locally and nationally, scheduling and planning classes, writing National Artists contracts, and training local educators.

21. In April 2023, Ms. Murray learned she had a high-risk pregnancy.

22. On April 11, 2023, Ms. Murray submitted a doctor's note to Kao's benefits team to request the following accommodations: no bending, no lifting over 20lbs., no twisting at the waist, no jumping, and no running.

23. After receiving the doctor's note, a member of the benefits team simply stated "I am assuming you will need to do such of the items below [listed accommodation]. I am not sure if we are able to accommodate this at this time."

24. Defendant did not offer, suggest, or discuss any possible accommodations.

25. On the evening of April 12, 2023, after performing field work in Chicago, Plaintiff requested she be allowed to stay at the hotel to rest instead of going out to dinner with her team because she felt very ill with intense abdominal pains.

26. Her supervisor, Anthony Soriano ("Soriano") – who was aware of Ms. Murray's high-risk pregnancy – insisted that she attend the dinner.

27. Soriano even drove Plaintiff's car because she was unable to drive due to the pain.

28. On the car ride, Soriano made unwelcome and unsolicited remarks to Murray about breast milk.

29. While at dinner, Ms. Murray had a grand-mal seizure.

30. After assessment, her doctor reported that the grand-mal seizure was connected to the high stress environment and her high-risk pregnancy.

31. Ms. Murray was subsequently diagnosed with epilepsy and was temporarily unable to drive her car.

32. Because of this restriction, Kao placed Ms. Murray on short-term disability, which ran concurrently with Ms. Murray's protected leave under the Family Medical Leave Act ("FMLA").

33. While on leave, Ms. Murray sought reasonable accommodations multiple times in order to allow her to return to work.

34. Defendant did not grant her requested accommodations. Defendant did not offer, suggest, or discuss any alternate possible accommodations.

35. In July 2023, Ms. Murray was medically cleared to drive and return to work.

36. Although she submitted the required documentation releasing her to work, Kao did not allow her to return.

37. Instead, Defendant presented Ms. Murray with two options: (1) return to work and, if she experienced another seizure prior to the birth of her child, she would be placed on unpaid leave, and then would not be eligible for her maternity leave; or (2) convert her short-term to long-term disability leave and remain ineligible for her maternity leave.

38. Ms. Murray was concerned about the potential for another seizure during her high-risk pregnancy. She again sought discussions about potential accommodations or transferring to a position that did not require driving. Defendant did not engage in these conversations.

39. Despite this, Ms. Murray returned to work on or around September 5, 2023.

40. Ms. Murray was able to work until the birth of her child in November 2023.

41. Ms. Murray continued working without restrictions after she returned from her maternity leave around February 2024.

42. As part of her job duties, Ms. Murray was required to go to a storage unit to pick up her materials and supplies.

43. In early June 2024, Ms. Murray stepped on a syringe when trying to access the storage unit. Ms. Murray then went to the emergency room where she was treated with oral retroviral drugs.

44. The medicine made Ms. Murray sick and disrupted her anti-seizure medicine.

45. Consequently, Ms. Murray suffered another seizure and was involved in a car crash.

46. Shortly after this incident, Charles Elias, Kao's Associate Direct of Education informed Ms. Murray that she could work remotely since she could not drive.

47. However, this accommodation was swiftly revoked by Soriano. Consequently, in order to continue working, Ms. Murray was forced to rely on her friends and family for transportation to her field work for two months.

48. Defendant's policy allowed for mileage reimbursement.

49. Soriano informed Ms. Murray that all miles driven by someone other than she could not be counted towards her car stipend; consequently, she was not reimbursed for all travel.

50. In August 2024, Ms. Murray was on a video call with her team. Due to the length of the meeting Ms. Murray needed to take a break in order to express milk.

51. Soriano would not allow Ms. Murray to leave the meeting or go off camera.

52. This led to colleagues witnessing milk leaking from Ms. Murray's breasts until she starting crying and took herself off of the call.

53. Ms. Murray developed mastitis after this incident.

54. On other occasions, Soriano told Ms. Murray that she should go pump in her car.

55. When Ms. Murray indicated that there was no privacy in her car because too many people walked, Soriano told her she could just lay on the floor of the car to pump.

56. In early September 2024, Soriano told Murray not to tell anyone about her epilepsy because he did not want anyone thinking she was receiving "special treatment."

57. Being asked to keep her epilepsy diagnosis to herself has been stigmatizing as her colleagues and clients are unsure of the cause of Ms. Murray's absences and seizures.

58. Murray informed Defendant's Human Resources ("HR") department about Soriano's instruction to keep her epilepsy diagnosis quiet. Plaintiff then learned that her remote work accommodation had been approved, but she had still been required to work in the field.

59. Due Soriano's continuous mistreatment, Ms. Murray submitted a request to change her manager.

60. Defendant denied her request.

61. Elias instead informed Murray he would sit in on all calls to supervise. However, Elias did not attend any subsequent meetings.

62. Ms. Murray continued working until late January 2025, when she suffered another seizure that caused a car crash.

63. Murray informed Soriano about the incident; he instructed her not to use the word "seizure" when reporting the crash to HR.

64. Soriano informed HR that Murray had only suffered "bumps and bruises" and characterized this crash as minor.

65. In fact, Murray suffered a severe concussion and required intensive dental surgery.

66. Murray was placed on short-term disability leave, again running concurrently with FMLA. Her leave was set to end March 5, 2025, but was extended through July 2025.

67. In or around May 2025, Ms. Murray reinitiated her attempts to engage in the interactive process with Kao to find a reasonable accommodation to allow her to return to work.

68. Ms. Murray was then presented with two options: (1) look for a fully remote role or (2) return to her role as a Field Education Manager with the condition that Ms. Murray complete an Independent Medical Examination.

69. Ms. Murray did not agree to the discriminatory practice of requiring an Independent Medical Examination when she had already been medically cleared, so she pursued a remote role.

70. Ms. Murray was excited about the opportunity to find a fully remote position and communicated this to Kao.

71. Around May 21, 2025, Ms. Murray learned of an upcoming job opening on Kao's internal site, Greenhouse, for the position of Partner Advisor Role. If Ms. Murray was interested, she was informed that Kao's recruiter would be on the lookout for her application.

72. Around May 27, 2025 Ms. Murray submitted her application and confirmed its submission with Kao.

73. Over the next few weeks Plaintiff had 3 virtual interviews with Kao personnel.

74. On July 11, 2025, Ms. Murray learned she did not receive the job for Partner Advisor Role.

75. Defendant claimed it did not offer this position to Ms. Murray because she (1) struggled to articulate a clear vision for the role; (2) was not comfortable working remotely; and (3) was not "high energy" enough in the interviews. Defendant also claimed that that Ms. Murray struggled on "why" a hypothetical client should use certain products.

76. On July 22, 2025, Ms. Murray spoke on the phone with Kao's hiring manager about her application for the Partner Advisor Role.

77. Kao's hiring manager told Ms. Murray she was not hired for different reasons than those previously articulated.

78. On July 27, 2025, Ms. Murray's driver's license was fully reinstated. At this point Ms. Murray was able to work as a Field Education Manager without restrictions.

79. However, Defendant did not permit Plaintiff to return to work but instead asked her to apply for Long-Term Disability.

80. Around July 30, 2025, Ms. Murray was informed that she could continue to apply for remote roles.

81. Ms. Murray was asked to fill out reasonable accommodation request forms again.

82. At this point, Ms. Murray had no new information to add. Defendant had barred Plaintiff from performing the Field Education Manager position due to discriminatory and harassing requirements and was not considered in good faith for the Partner Advisor Role.

83. Consequently, Plaintiff reasonably did not believe Defendant would seriously consider her for any other remote position.

84. Ms. Murray was able to work, but Defendant refused to allow her to return.

85. On September 5, 2025, Ms. Murray was constructively discharged.

**COUNT I – VIOLATION OF THE PWFA**

86. Plaintiff restates and incorporates each of the preceding paragraphs as though fully set forth herein.

87. Under the PWFA, medical conditions related to pregnancy of the specific employee in question. 29 C.F.R. §1636.3(b).

88. The PWFA applies to known limitations due to the pregnancy.

89. Plaintiff presented pregnancy-related accommodation requests to Defendant in April 2023, including limitations on bending, lifting, twisting at the waist, no jumping and no running, and not go out to a company dinner, which triggered a grand-mal seizure.

90. Plaintiff's doctor attributed her grand-mal seizure to complications from her high-risk pregnancy.

91. Following her grand-mal seizure, and during her pregnancy, Kao placed Plaintiff on a short-term disability leave. Plaintiff sought a reasonable accommodation to return to work that was routinely denied until well after Plaintiff was cleared to drive a car.

92. Defendant continuously denied Plaintiff's request for reasonable accommodations as part of the pattern and policy of discrimination established by her pregnancy-related seizure condition.

93. Defendant violated Plaintiff's rights under the PWFA.

94. Plaintiff has been injured by these actions.

**COUNT II – VIOLATION OF THE IHRA**
**FAILURE TO ACCOMMODATE BASED ON PREGNANCY**

95. Plaintiff restates and incorporates Paragraphs 1 to 85 as if fully set forth herein.

96. The IHRA provides a cause of action when an employer rejects an employee's request for a reasonable accommodation for any medical or common condition of an employee related to pregnancy or childbirth.

97. Defendant denied Plaintiff's reasonable accommodation requests.

98. Defendant violated Plaintiff's rights under the IHRA.

99. Plaintiff has been injured by Defendant's actions.

**COUNT III – VIOLATION OF THE PUMP ACT**

100. Plaintiff restates and incorporates Paragraphs 1 to 85 as if fully set forth herein.

101. Following her pregnancy, Plaintiff sought reasonable accommodations related to lactation.

102. Defendant violated the PUMP Act.

103. Plaintiff has been injured by Defendant's actions.

**COUNT IV – VIOLATION OF THE INMWA**

104. Plaintiff restates and incorporates Paragraphs 1 to 85 as if fully set forth herein.

105. Following her pregnancy, Plaintiff sought reasonable accommodations related to lactation.

106. Defendant denied Plaintiff's request for a reasonable accommodation to go off video to pump.

107. Plaintiff developed mastitis as a result of Defendant's actions.

108. Defendant further denied Plaintiff's request for a reasonable accommodation for a location to pump and was told to just "pump in her car."

109. Defendant violated Plaintiff's rights under the INMWA.

110. Plaintiff has been injured by Defendant's actions.

**COUNT V – VIOLATION OF THE ADA**
**DISCRIMINATION BASED ON DISABILITY**

111. Plaintiff restates and incorporates Paragraphs 1 to 85 as if fully set forth herein.

112. Following her diagnosis of epilepsy, Ms. Murray was disabled within the meaning of the ADA's definition of the term.

113. Kao perceived Ms. Murray as having a disability.

114. Following her diagnosis of epilepsy, Kao discriminated against Ms. Murray by not allowing her to return to work upon clearance from her doctor and reinstatement of her driver's license and by failing to accommodate Ms. Murray so she could return to work.

115. Defendant used discriminatory and stigmatizing language surrounding Ms. Murray's diagnosis.

116. Defendant imposed additional requirements upon Plaintiff, specifically including heightened medical examination requirements that it did not require of individuals who were not disabled and/or whom Defendant did not perceive as disabled.

117. Ms. Murray continuously experienced a hostile work environment since her epilepsy diagnosis.

118. Ms. Murray was constructively discharged.

119. Ms. Murray was injured by Defendant's actions.

120. Defendant violated the ADA.

**COUNT VI – VIOLATION OF THE IHRA**
**DISCRIMINATION BASED ON DISABILITY**

121. Plaintiff restates and incorporates Paragraphs 1 to 85 as if fully set forth herein.

122. The matters set forth in this Count arise from Defendant's violation of the IHRA, 775 ILCS 5/2-102(I).

123. Following her diagnosis of epilepsy, Ms. Murray was disabled within the meaning of the IHRA's definition of the term.

124. Kao perceived Ms. Murray as having a disability.

125. Following her diagnosis of epilepsy, Kao discriminated against Ms. Murray by not allowing her to return to work upon clearance from her doctor and reinstatement of her driver's license and by failing to accommodate Ms. Murray so she could return to work.

126. Defendant used discriminatory and stigmatizing language surrounding Ms. Murray's diagnosis.

127. Defendant imposed additional requirements upon Plaintiff, specifically including heightened medical examination requirements that it did not require of individuals who were not disabled and/or whom Defendant did not perceive as disabled.

128. Ms. Murray was constructively discharged.

129. Ms. Murray was injured by Defendant's actions.

130. Defendant's violations of the IHRA have caused Plaintiff to incur damages, including but not limited to loss of income.

**COUNT VII – VIOLATION OF THE ADA**
**FAILURE TO ACCOMMODATE**

131. Plaintiff restates and incorporates Paragraphs 1 to 85 as if fully set forth herein.

132. The matters set forth in this Count arise from Defendant's violation of the ADA, 42 U.S.C. § 120101, *et seq.*

133. At all relevant times, Plaintiff was an "eligible employee" and Defendant was an "employer" under the ADA.

134. At all relevant times, Defendant was aware of Plaintiff's disability.

135. Plaintiff was at all relevant times a qualified individual with a disability pursuant to the ADA.

136. Plaintiff was able to perform the essential functions of her job with a reasonable accommodation.

137. Following her diagnosis of epilepsy, Ms. Murray was disabled within the meaning of the ADA's definition of the term.

138. Kao perceived Ms. Murray as having a disability.

139. Following her diagnosis of epilepsy in, Kao failed to accommodate Ms. Murray by not allowing her to return to work upon clearance from her doctor and reinstatement of her driver's license.

140. Defendant's repeated denial to meaningfully engage in the interactive process resulted in the failure to identify or provide a reasonable accommodation that would allow her to work.

141. Ms. Murray was constructively discharged.

142. Ms. Murray was injured by Defendant's actions.

**COUNT VIII – VIOLATION OF THE IHRA**
**FAILURE TO ACCOMMODATE**

143. Plaintiff restates and incorporates Paragraphs 1 to 85 as if fully set forth herein.

144. The matters set forth in this Count arise from Defendant's violation of the IHRA, 775 ILCS 5/2-102(J).

145. Following her diagnosis of epilepsy, Ms. Murray was disabled within the meaning of the ADA's definition of the term.

146. Kao perceived Ms. Murray as having a disability.

147. Following her diagnosis of epilepsy in, Kao failed to accommodate Ms. Murray by not allowing her to return to work upon clearance from her doctor and reinstatement of her driver's license.

148. Defendant's repeated denial to meaningfully engage in the interactive process resulted in the failure to identify or provide a reasonable accommodation that would allow her to work.

149. Ms. Murray was constructively discharged.

150. Ms. Murray was injured by Defendant's actions.

151. Defendant's violations of the IHRA have caused Plaintiff to incur damages, including but not limited to loss of income.

**COUNT IX – VIOLATION OF THE IHRA**
**RETALIATION**

152. Plaintiff restates and incorporates Paragraphs 1 to 85 as if fully set forth herein.

153. Ms. Murray reported Soriano's discriminatory treatment to Human Resources in or around September 2024.

154. Shortly after, Ms. Murray requested a request to change her manager.

155. Kao denied Ms. Murray's request.

156. Defendant did not allow Ms. Murray to return to her Field Educator position, unless she complied with unlawful conditions.

157. Kao did not hire Ms. Murray for a remote position she was qualified for and gave shifting reasoning as a pretextual justification.

158. Plaintiff was constructively discharged because she reported and/or opposed the discriminatory treatment.

159. Defendant retaliated against Ms. Murray in violation of the IHRA.

160. Defendant's violations of the IHRA have caused Plaintiff to incur damages, including but not limited to loss of income.

**COUNT X- VIOLATION OF THE IWPCA**

161. Plaintiff restates and incorporates Paragraphs 1 to 85 as if fully set forth herein.

162. At all relevant times herein, Plaintiff was an 'employee' under the IWPCA.

163. At all relevant times herein, Plaintiff was an 'employer under the IWPCA.

164. The IWPCA provides that employers shall be required to pay every employee all compensation owed an employee by an employer pursuant to an agreement between the parties.

165. During all relevant times, Kao had a mileage reimbursement policy for car travel.

166. Kao wrongfully withheld milage reimbursement from Plaintiff.

167. Interest on unpaid wages accrue at a rate of 5% per month. 820 ILCS 115/14.

168. The IWPCA mandates that Plaintiff recover her unpaid compensation, costs, and all reasonable attorneys' fees related. 820 ILCS 115/14.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Morgan Murray respectfully requests that this Court enter an order as follows:

a) Back pay, front pay, and lost benefits, including but not necessarily limited to:

b) Liquidated damages;

c) All actual monetary damages;

b) Compensatory damages;

c) Punitive damages;

e) Equitable damages;

f) Injunctive relief;

g) Statutory damages and interest;

h) Attorney's fees and costs;

i) Pre- and post-judgment interest; and

j) Such other and further relief as the Court deems just and proper.

Dated: March 16, 2026

Respectfully submitted,

MORGAN MURRAY

By: /s/ *Amanda Burns*
Attorney for Plaintiff

Alexis Martin (6309619)
Amanda Burns (6332506)
Caffarelli & Associates, Ltd.
8 S. Michigan Ave., Suite 1200
Chicago, Illinois 60603
Tel. (312) 763-6880
*aburns@caffarelli.com*
*amartin@caffarelli.com*